CHRISTINE M. LIEBSACK, APPELLANT, v. RICKIE D. LIEBSACK, APPELLEE, EMMANUEL LIEBSACK ET AL., INTERVENERS-APPELLEES.

258 N. W. 2d 130

Filed October 12, 1977. No. 41142.

Cronin, Shamberg & Wolf, for appellant.

No appearance for appellee.

Luebs, Tracy, Dowding, Beltzer & Leininger, for interveners-appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, MCCOWN, CLINTON, BRODKEY, and WHITE, JJ.

CLINTON, J.

This cause arises upon an application for change of custody of a male child from respondent father to the petitioner mother. The paternal grandparents of the child intervened and custody was awarded to them. On appeal the mother urges that she is entitled to custody because she has not been shown to be unfit and that when a controversy as to custody arises between a parent and third persons, the determination is to be based upon the best interests of the child with due regard to the superior rights of a fit, proper, and suitable parent.

The petitioner, Christine M. Liebsack, and the respondent, Rickie D. Liebsack, were married on June 6, 1970, and one child, Chad J. Liebsack, whose custody is here involved, was born on October 9, 1971. The marriage was dissolved on November 14, 1973, and at that time, pursuant to stipulation of the parties and confirmed by the court after hearing, the custody of Chad was awarded to the father, Rickie. The mother, Christine, made no personal appearance in the dissolution action and her request for restoration of her maiden name was granted at that time. At the time of the dissolution of the marriage Rickie was living with his parents, having resided with them from the time the parties separated about 1 year earlier, and they, apparently with the acquiescence of Christine, had largely assumed full responsbility for the raising of Chad. After the dissolution Rickie obtained employment in another city and thereafter saw his son only occasionally. The

grandparents, as a practical matter, were the acting parents of the child from the time of the separation of the parents until the hearing on the custody change approximately 4 years later.

On October 9, 1974, Christine married John Bieber and they now have an infant daughter. The application for change of custody was filed in August of 1976 and was heard on August 31 and September 23 of that year.

At the time of dissolution Christine was not granted any right of visitation by the court, but such rights were voluntarily given by the grandparents and she exercised such rights apparently eight times during the period involved, on some occasions taking the child with her for a period of a few days. She has not at any time been determined to be an unfit parent. She attributed her original agreement to place custody in the father to her financial inability to take care of the child at that time and an immature unwillingness to assume responsibility. She testified at the custody hearing that her present husband has good employment, that they have a good and stable home, and that she is able and anxious to assume responsibility for Chad. Her husband testified to his willingness to support and care for the child. At the time of the hearing Christine was 26 years of age, the intervener grandmother was 60, and the grandfather 61. Both grandparents are employed full time and are in good health. The grandmother indicated her willingness to terminate her employment if the interests of Chad require it. The evidence shows that Chad is left with a responsible babysitter from about 8 o'clock a.m. until 4 p.m., 5 days a week. He has now started school, attending half days, and is taken to and returned from school by the babysitter. His grandfather picks him up from the babysitter's home at about 4 o'clock. The babysitter, who has children in the same school with Chad, testified that Chad states he likes his mother

and father, but he loves his grandparents. The evidence is that Chad is happy and well cared for in his present situation. The evidence is that the grandparents treat, love, and discipline Chad as if he were their own child and not a grandchild.

The trial judge recognized the difficulty and importance of the custody decree and founded it upon a finding that the placing of the child in the custody of the interveners would afford the most stable environment for the child. The custody order granted to Christine reasonable rights of visitation.

The evidence establishes that the interveners have afforded the child a normal, stable environment and normal associations with other children, and that for all practical purposes they have been the child's parents for the past 4 years. The trial court's conclusion that in this case the best interests of the child are met by granting custody to the grandparents is supported by the evidence, even after giving due regard to the natural right of custody of a fit parent.

AFFIRMED.