GAIL M. WHITLATCH, APPELLEE, v. WILLIAM A. WHITLATCH, APPELLANT. SHIRLEY KRUMM, INTERVENOR-APPELLEE.

293 N. W. 2d 856

Filed June 24, 1980. No. 42850.

Herbert J. Friedman of Friedman Law Offices, for appellant.

Gary J. Nedved of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellee.

Douglas L. Kluender of Healey, Brown, Wieland & Kluender, for intervenor-appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

William A. Whitlatch, respondent below, appeals from a decree entered by the District Court for Lancaster County, Nebraska dissolving his marriage to Gail M. Whitlatch, distributing the personal property of the marriage to the respective parties, awarding the physical and legal custody of the minor child of the marriage to the intervenor, Shirley Krumm, who is the child's maternal grandmother, and awarding child support and attorney's fees. We affirm.

Gail and William were married on October 6, 1974. Difficulties between the parties arose almost imme-

diately after their marriage, and three months later, William entered the United States Navy. One child, Lee Allen Whitlatch, was born as issue of the marriage on September 17, 1975, subsequent to William's entering the armed services. Following Lee's birth, Lee and Gail resided with Gail's mother, Shirley. When Lee was approximately 3 months of age, Gail moved to a residence of her own, leaving Lee with Shirley. Lee has continued residing with Shirley and, in fact, believes Shirley to be his mother.

Gail filed a petition for dissolution of the marriage on April 26, 1976. Since William was in the armed services, nothing was done in this matter until after William's discharge on March 14, 1977. On June 23, 1977, the grandmother, Shirley, intervened in the action, contending that neither Gail nor William were fit and proper persons to have the care, custody, and control of the child. Pursuant to Shirley's request, the court appointed a guardian ad litem for Lee for the purpose of determining his best interests, particularly as among Gail, William, and Shirley. Temporary custody of Lee was awarded to Shirley, subject to reasonable rights of visitation by Gail and William, by agreement of *all* the parties. At the trial held on the dissolution petition, the sole issue in dispute was the question of Lee's custody. Gail testified that William had seen Lee five times since his birth. Shirley testified that William had visited Lee on six occasions since Lee's birth. Of those six occasions, four occurred during the time period from September 1978 until the date of trial, during which time a court order granted visitation to William on 2 days of each week. William testified that he did not visit Lee more often because it was difficult for him to be in the same house with Shirley.

Evidence was also adduced with regard to the living facilities and environment of the parties desiring custody. It should be noted that Gail did not attempt to obtain custody of Lee and, in fact, requested the

court to award the custody to Shirley. The evidence establishes that Shirley resided in a four-bedroom house with her husband and two children from a prior marriage. The guardian ad litem testified that the Krumm residence was new, neat, and clean with plenty of room for Lee to live and be happy. William, on the other hand, testified that he was going to move into another house with a male friend, who had custody of a child. However, at the time of trial, William was still residing with his parents in a residence which was unacceptable, in the opinion of the guardian ad litem, for the rearing of a child. On the basis of the evidence presented, the trial court dissolved the marriage of Gail and William; awarded each party the personal property in his or her possession; awarded the physical and legal custody of Lee to Shirley, subject to reasonable visitation by both Gail and William; ordered that Gail and William each pay the sum of $75 per month as child support; and ordered that Gail, William, and Shirley each pay $300 as fees for the guardian ad litem.

William has appealed to this court, his sole assignment being that the trial court erred in granting permanent custody of Lee to Shirley. Specifically, William claims that a natural parent should have preference over third persons in actions awarding custody, so long as the natural parent is not shown to be unfit. This court has frequently stated that, in determining issues of custody of children, the paramount consideration is the best interests of the child, and we have very recently repeated this general rule. *Elsasser v. Elsasser, ante* p. 128, 291 N.W.2d 260 (1980). In fact, it is so provided by statute. Neb. Rev. Stat. § 42-364 (Reissue 1978) provides, so far as material herein, as follows:

When dissolution of a marriage or legal separation is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified,

including placing the minor children in the custody of the court or third parties, or terminating parental rights pursuant to subdivision (4) of this section if the welfare of the children so requires. Custody and visitation of minor children shall be determined *on the basis of their best interests.* Subsequent changes may be made by the court after hearing on such notice as prescribed by the court.

(1) In determining with which of the parents the children, or any of them, shall remain, the court *shall consider the best interests of the children . . . .*

(Emphasis supplied.)

It is true that in *Williams v. Williams,* 161 Neb. 686, 74 N.W.2d 543 (1956), we held that the courts may not properly deprive a parent of the custody of a minor child unless it is shown that such parent is unfit to perform the duties imposed by the relation, or has forfeited that right. However, in that case, we also stated:

While it is true that a parent has a natural right to the custody of his child, the court is not bound as a matter of law to restore a child to a parent under any and all circumstances. The welfare of a child of tender years is paramount to the wishes of the parent, where it has formed a natural attachment for persons who have long stood in the relation of parents with the parents' approval and consent. This has long been the rule in this state. [Citations omitted.]

We quite agree that the natural right of a parent to the custody of his child is not lightly to be denied. But where it appears, as here, that the father abandoned the care of his child to his parents for 8 years beginning from the day of its birth, with his full ap-

proval and consent, he has forfeited his natural right to the child's custody. The best interests of the child require that he remain in the custody of the respondents who have occupied the relation of parents throughout the 8 years of the child's life and whose home has been the only home the child has ever known.

*Id.* at 690-91, 74 N.W.2d at 545.

We have frequently stated the rule to be that when a controversy arises as to the custody of a minor between a parent and a third person, the custody of the child is to be determined by the best interests of the child *with due regard for the superior rights, as between the parties, of a fit, proper, and suitable parent.* See, *Bigley v. Tibbs*, 193 Neb. 4, 225 N.W.2d 27 (1975); *Liebsack v. Liebsack*, 199 Neb. 266, 258 N.W.2d 130 (1977); *Jorgensen v. Jorgensen*, 194 Neb. 271, 231 N.W.2d 360 (1975).

This court recently held in *Haynes v. Haynes*, 205 Neb. 35, 286 N.W.2d 108 (1979), which case also involved an intervention by the grandmother to obtain custody of the minor children as against the natural father:

We have many times said that the primary consideration in matters involving child custody, whether arising as a part of the proceeding for dissolution of marriage or otherwise, is that the award of custody should be determined in accordance with the test of what is in the best interests of the minor child. Liebsack v. Liebsack, 199 Neb. 266, 258 N.W.2d 130; Bigley v. Tibbs, 193 Neb. 4, 225 N.W.2d 27; Kaufmann v. Kaufmann, 140 Neb. 299, 299 N.W. 617.

While it is true that a parent has a natural right to the custody of his child, the court is not bound as a matter of law to restore a child to a parent under any and all circum-

stances. The welfare of a child of tender years is paramount to the wishes of the parent where it has formed a natural attachment for persons who have long been in the relation of parents with the parents' approval and consent. Williams v. Williams, 161 Neb. 686, 74 N.W.2d 543.

. . . .

We therefore affirm the judgment which placed the custody of the children for the present with Grandmother and ordered Father to make child support payments.

*Id.* at 39, 286 N.W.2d at 110.

*Haynes,* although recognizing the general rule stated above, makes it clear that the rule is subject to the "best interests of the child" where the facts so warrant.

In *Christensen v. Christensen,* 191 Neb. 355, 215 N.W.2d 111 (1974), this court stated:

The judgment concerning the custody of children is necessarily quite subjective in nature. Many factors may be considered in light of the particular circumstances of each individual case. The general considerations of the moral fitness of the parents, of respective environments offered by each parent, the emotional relationship between the children and their parents, their age, sex, and health, the effect on the children of continuing or disputing an existing relationship, the attitude and the stability of character of each parent, and the capacity to furnish the physical care and education and needs of the children are some of many factors for the court to consider. In evaluating the general concept of the best interests and welfare of the children it is settled and fundamental law that this court will give weight to the fact that the trial judge saw and observed

the witnesses and the attitude of the parents
at the trial.
*Id.* at 358, 215 N.W.2d at 114.

In the decree entered in this matter, the trial court stated: "Although there is nothing in the record to indicate that the respondent [William] is an unfit parent, there is little evidence from which it can be determined precisely what kind of a parent he is or would be." We must agree with that conclusion. Although William testified that he desired custody of Lee, the record would indicate to the contrary. That he showed little interest in Lee prior to the date of trial cannot be disputed. His record of visitation, or lack thereof, shows little interest in Lee. We note with interest the fact that only following William's retention of new counsel, midway through the trial, did he attempt to exercise his visitation rights on a regular basis. Although William indicated at trial that he would take any actions necessary for Lee's maintenance and support, it is undisputed that William had not then, in fact, made preparations for the rearing and support of a minor child. William had not yet left the residence of his parents, which residence was found unsuitable by the guardian ad litem, nor had William attempted to purchase any clothing or furniture for the use of a minor child. Moreover, we question whether the living environment proposed by William would be in Lee's best interests. William proposed living with a male friend and that person's minor child. Shirley, on the other hand, was living in the more normal and probably more stable family setting.

Likewise, we believe it is in Lee's best interests that he be left with Shirley because of the emotional relationship which she and Lee have established. The record is clear that Lee looked upon Shirley as his mother and that their relationship was close. On the other hand, the record reveals that Lee and William had a strained relationship. Although it is pos-

sible that the relationship of Lee and William will improve in the future, we do not believe that the thrusting of Lee into a relationship which is strained and into an environment which is of uncertain stability would be in Lee's best interests at this time.  It is clear from the record that Shirley has afforded Lee a normal, stable environment and normal associations with other children since his birth in 1975.  For all practical purposes, Shirley has been Lee's mother for his entire life.  We conclude that the trial court's finding that the best interests of Lee would be met by granting custody to Shirley is supported by the evidence, even giving "due regard for the superior rights of a fit, proper, and suitable parent." *Liebsack v. Liebsack, supra* (court syllabus).

Although Gail and Shirley have requested that attorney's fees be awarded them in this action, we conclude that, under the facts of this case, such request should be denied, and that the parties should bear the expense of their respective attorneys.  We affirm the award of fees for the guardian ad litem.

AFFIRMED.

WHITE, J., concurs in result.