ROBERT WAYNE TAUTFEST, APPELLANT, V. NANCY KAY TAUTFEST, APPELLEE.

338 N.W.2d 49

Filed August 26, 1983. No. 82-440.

Miles W. Johnston, Jr., of Johnston, Barber & Wherry, for appellant.

Roy A. Sheaff and John F. Sheaff of Sheaff Law Offices, for appellee.

McCown, Caporale, and Shanahan, JJ., and Brodkey, J., Retired, and Colwell, D.J., Retired.

Colwell, D.J., Retired.

Robert Wayne Tautfest, petitioner, appeals a child custody modification order awarding physical custody of his daughter, Amy Jo Tautfest, born March 10, 1978, to Henry and Judy Lambert, maternal grandparents. The original decree of October 8, 1979, awarded custody to the mother, Nancy Kay Tautfest, respondent-appellee.

A summary of the pleadings is necessary. On October 30, 1980, Robert filed his application for custody of Amy, alleging that she was in the custody and care of Henry and Judy Lambert, that there were changed circumstances of both parents, and that the best interests of Amy required awarding her custody to Robert. The prayer was for permanent custody. Robert served notice on Nancy and on Henry and Judy Lambert. Nancy's answer denied the allegations and alleged that Robert was unfit, that Nancy and Amy lived with Nancy's parents, Henry and Judy Lambert, and that for Amy's best interests she should remain in that living environment. Nancy and the Lamberts filed their joint counterapplication alleging that Robert was unfit, that Nancy and Amy have lived in the Lambert home for an extended period, and that for Amy's

best interests she should be left in that environment under their joint custody. The prayer was for joint custody and equitable relief. Robert filed no responsive pleading; the issues were tried as if he had filed a general denial, and we will so consider it. Robert made no objection to the Lamberts' intervention; however, they are proper parties. *Harris v. Harris*, 151 Neb. 191, 36 N.W.2d 849 (1949).

The modification decree granted reasonable visitation to Nancy and particular visitation times to Robert. No findings were made as to fitness or change of circumstances of the parents. Nancy did not appeal, and no issue is made that her parental custodial rights are in conflict with the claims of her parents.

Robert assigns as error that (1) there was no evidence of either his unfitness or his forfeiture of parental rights and (2) the best interests of Amy would be served by awarding her custody to him.

There is little creditable dispute of the facts. Following the dissolution, Nancy established a home with Amy in Lincoln, Nebraska. She was employed. In July 1980 she began a live-in arrangement with Jerry Hollandsworth; at the insistence of the Lamberts, Amy went to live with them at their home, 4000 South 35th Street, Lincoln, Nebraska, where Amy remains. Robert continued his visitation privileges. Nancy regularly visited the Lambert home and assisted in Amy's care until October 1980 when she and Jerry went to Las Vegas, Nevada, where they were married. They returned to Lincoln in December 1980.

Robert ceased making his $100 monthly child support payments in September 1980; the total delinquency was $1,700; he claimed that he deposited the child support money in a savings account for Amy, but this was not verified. The Lamberts have furnished all of Amy's financial support. Nancy supported herself and Jerry. Nancy separated from Jerry and moved to the Lambert home in July 1981.

Nancy and Jerry were divorced in 1981. A child born of that marriage was relinquished for adoption. The Lamberts own a four-bedroom home; Henry has a good work record as a tilesetter. Robert has a speech defect that limits his job opportunities; he has remarried. Neither Robert nor his wife has a record of regular employment. Robert's parents help support them. Nancy relies upon the Lamberts for guidance and assistance in the rearing of Amy; however, she controls and supervises Amy's needs and care. Mrs. Lambert testified, "Nancy takes full responsibility of Amy. She does all of Amy's feeding, her bath. She gets along real good with all of us. We all work together with her . . . ." Nancy intends to complete some additional nursing training, and when she is able to support herself she will establish her own home with Amy. A custody investigator's report dated June 22, 1981, recommended that the custody of Amy remain with the Lamberts. An update report of April 16, 1982, makes no recommendations; however, it confirms the evidence that Nancy assumed the care of her child and that she intended to move from the Lambert home.

"When dissolution of a marriage . . . is decreed, the court may include such orders in relation to any minor children and their maintenance as shall be justified, including placing the minor children in the custody of the court or third parties . . . . Custody and visitation of minor children shall be determined on the basis of their best interests. Subsequent changes may be made by the court *after hearing on such notice* as prescribed by the court." (Emphasis supplied.) Neb. Rev. Stat. § 42-364 (Reissue 1978).

We review these proceedings de novo, Neb. Rev. Stat. § 25-1925 (Reissue 1979), and reach independent conclusions on the issues presented. *Campbell v. Campbell*, 202 Neb. 575, 276 N.W.2d 220 (1979).

"A decree fixing custody of minor children will not be modified unless there has been a change of circumstances indicating that the person having cus-

tody is unfit for that purpose or that the best interests of the children require such action." (Syllabus of the court.) *Ahlman v. Ahlman*, 201 Neb. 273, 267 N.W.2d 521 (1978).

We first consider Robert's application. The evidence shows that there have been some changes in the circumstances of both parents since the dissolution decree; however, such evidence does not support a finding of either unfitness of either parent or forfeiture of rights, or that the best interests of Amy would be served by awarding her custody to Robert. Robert failed to pay child support, and except for a few months Amy has been living with her mother in the Lambert home where Amy received very good care and supervision, although the Lambert support and strong family guidance are factors. Robert's application for custody was properly denied.

Robert's appeal primarily objects to the award of physical custody to the grandparents, arguing that such is contrary to *Nielsen v. Nielsen*, 207 Neb. 141, 296 N.W.2d 483 (1980). We conclude that it is not necessary to consider *Nielsen*; rather, we dispose of that issue on procedural grounds not assigned. Generally, this court only considers errors assigned and discussed; however, by statute and court rule we may note plain error not assigned. Neb. Rev. Stat. § 25-1919 (Reissue 1979); Neb. Ct. R. 9D(1)d (Rev. 1982); *Cockle v. Cockle*, 204 Neb. 88, 281 N.W.2d 392 (1979).

"Under section 42-364, R. S. Supp., 1974, the trial court on its own motion may make subsequent changes or modifications in a decree of dissolution of a marriage in relation to any minor children and their maintenance when required, *but only after notice* to the parties and an opportunity to be heard." (Emphasis supplied.) *Francis v. Francis*, 195 Neb. 417, 421, 238 N.W.2d 468, 470 (1976).

The counterapplication alleged and prayed only that the custody of Amy should be awarded to the applicants "jointly." All of their supporting evi-

dence on that issue was directed to their joint custody. Further, it was a temporary plan until Nancy could support herself.

The only evidence in the record concerning the award of custody to the Lamberts was elicited by the judge: "THE COURT: Would you be willing for you and your husband to have custody of Amy Jo without your daughter having joint custody? THE WITNESS [Judy Lambert]: If that is the way we could have it, yes, but we would like it with her." There was no notice to Robert that there was an issue of the award of physical custody to the grandparents. Robert was entitled to such a notice. Under those circumstances, it was plain error for the court to award physical custody to the Lamberts. The award of physical custody of Amy to the Lamberts is set aside.

From our further de novo review of the counterapplication, we find that Amy's best interests are being served with Nancy as the custodial parent, utilizing the home, financial support, and strong family influences of the Lamberts. The award of joint custody to Nancy and her parents would neither change nor strengthen the original custody order. The counterapplication is dismissed, and the decree of dissolution of October 8, 1979, relating to child custody is reinstated.

Visitation is an issue within the pleadings. The change of the particular times for Robert's visitation is fair and for Amy's best interests, *Heyne v. Kucirek*, 203 Neb. 59, 277 N.W.2d 439 (1979), and that part of the modification order is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.

BRODKEY, J., Retired, dissenting.

I must respectfully dissent from the majority opinion. The hearing in this case was held upon the petition filed by Robert Wayne Tautfest, the father, seeking custody of his child Amy Jo, and on the counterapplication of Nancy Kay Tautfest and her

parents, Henry and Judy Lambert, seeking joint custody of Amy Jo. The trial court awarded custody to the Lamberts, but not to Nancy Kay Tautfest. The majority contends that since the counterapplication was made by both Nancy Kay and the Lamberts, the court had no power to award the custody of Amy Jo separately to the Lamberts in view of the provision of Neb. Rev. Stat. § 42-364 (Reissue 1978), which provides that changes in custody may be made by the court after a hearing on such notice as prescribed by the court. In other words, the majority would appear to contend that since the counterapplication was filed by them jointly, the court cannot consider the parties separately and award custody to only one of them. This, to my way of thinking, is a hypertechnical approach and does not solve the problem presented in this appeal. It should also be remembered that marriage dissolution cases, including child custody aspects thereof, are equitable in nature, and equity powers are broad enough to permit the fashioning of a just result without being thwarted by hypertechnical matters.

A careful review of the record in this case convinces me that the best interests of Amy Jo would be served, at least for the time being, by having the custody of Amy Jo remain in the Lamberts, her grandparents, who have been supplying the financial necessities for the support of Amy Jo, and also guidance and counseling. If and when the mother, Nancy Kay Tautfest, completes her education and is prepared to go out into the world and establish a home of her own, and has demonstrated the capacity to support and take care of Amy Jo, then there would be such a change in circumstances that would entitle her to apply for a change in custody of Amy Jo to her. We have held that the judgment concerning the custody of children is necessarily quite subjective in nature and that many factors may be considered in light of the particular circumstances of each individual case; also, that in evaluating the

general concept of the best interests and welfare of the children, great weight will be given to the fact that the trial judge saw and observed the witnesses. *Whitlatch v. Whitlatch*, 206 Neb. 527, 293 N.W.2d 856 (1980). The trial court in this case saw and observed the witnesses and, I am convinced, reached the right result. I would affirm.