Lyle PIERCE et al., Appellants,

v.

NATIONAL FARMERS UNION
PROPERTY & CASUALTY
COMPANY, Respondent,

Samuel Genereux, Respondent.

No. C3–83–1495.

Court of Appeals of Minnesota.

May 22, 1984.

Neil A. McEwen, Thief River Falls, for appellants.

Kurt J. Marben, Thief River Falls, for Nat. Farmers Union Property & Cas. Co.

Paul G. Woutat, Grand Forks, N.D., for Samuel Genereux.

Heard, considered and decided by POPO-VICH, C.J., and FORSBERG and RANDALL, JJ.

## OPINION

RANDALL, Judge.

Appellant-plaintiffs appeal from a judgment entered in their favor holding National Farmer's Union Property & Casualty Co. (National), respondent, liable on several crop insurance contracts. Appellants claim the trial court erred by comparing fault when determining policy coverage. This decision by the trial court would substantially reduce the net judgment entered in

favor of appellant-plaintiffs. Appellants also claim the trial court erred by refusing to submit to the jury the question whether appellants were entitled to damages because National wrongfully withheld permission to plow back their fields. Third, appellants appeal the trial court's directed verdict in favor of insurance agent Samuel Genereux, respondent. Last, appellants claim the trial court incorrectly calculated the amount of damages. Affirmed in part, reversed in part, and remanded.

## FACTS

Appellants Pierce Farms and Agassiz Farms are family farming ventures owned by members of the Lyle Pierce family. Respondents are the insurance company (National) that issued "Multiple Peril Crop Insurance" to appellants and the agent (Genereux) who sold the insurance policies to appellants.

Appellants rented 2370 acres of land in Marshall and Pennington Counties for the 1982 crop season. The land consisted of thirteen separate fields within a sixteen mile radius. Appellants planned to raise sunflowers but had never farmed in either Marshall or Pennington County. Appellants could not afford a loss on this new venture because much of the operation was financed, and decided to buy crop insurance to protect themselves against potential losses.

About April 23, 1982, appellants contacted Genereux about buying "Federal Crop Insurance". Genereux was an agent for National but was also authorized to sell "Federal Crop Insurance". Although appellants requested "Federal Crop Insurance", Genereux wrote the policies with National. National's crop insurance policy was the same in terms of coverage and adjustment as "Federal Crop Insurance".

Appellants' efforts to farm the leased land were hampered by a cold wet spring. The fields became infested with weeds and the crop was a total loss. In late July 1982, appellants contacted Genereux to file a claim. National sent claims adjusters to inspect the fields in early August. The

adjusters attributed the crop loss to improper farming practices including low quality seed, improper cultivation, and failure to use fertilizer. Sunflower farms in the immediate area of appellants had much better crops, and some area farmers testified concerning appellants' poor farm practices.

Appellants claim they requested permission to plow back the sunflower fields at that time in order to prepare the fields for the following year. National disputed this claim asserting that although appellants indicated they would plow back the fields if they received a settlement, appellants never formally requested permission to plow back their fields. National's policy stated, "DO NOT DESTROY THE CROP or put the land to another use without our consent. If you do, your insurance will be voided and you will still be obligated for the premium."

Two of National's claims adjusters met with appellants immediately after the field inspections. The adjusters told appellants they were recommending the claims be denied for failure to follow customary farming practices. On August 24, 1982, appellants were sent a letter informing them their claim was being denied by National and no further action would be taken. Upon written request by appellant's attorney in November 1982, National did provide written permission to plow back the fields. Appellants plowed back about 500 acres and were liable to their landlords for failure to plow back the remaining acreage. Appellants did not extend their leases for the 1983 crop season.

The trial court dismissed Genereux from the suit because appellants .failed to prove damages from his actions, or prove that "Federal Crop Insurance" would have handled their claim differently than National. The trial court ruled that the issue of whether National wrongfully refused to grant permission to plow back the fields would not be submitted to the jury. The jury returned a verdict finding that the crop loss was 40% attributable to appellants' failure to follow good farming prac-

tices and 60% attributable to bad weather conditions. The trial court determined appellants were entitled to $80,088 and deducted $16,429 for unpaid insurance premiums for a final judgment of $63,659. The deduction was made since National Farmers Union had counterclaimed against appellants for unpaid insurance premiums on the policy in question, and the evidence showed the insurance premiums were in fact unpaid.

## ISSUES

1. Whether the insurance contract required crop losses to be apportioned between insurable and uninsurable causes.

2. Whether the trial court erred by excluding evidence concerning lost profits that may have resulted from a refusal to permit plow back of appellants' fields.

3. Whether the trial court erred by dismissing insurance agent Genereux from the action.

4. Whether the trial court calculated damages correctly.

## ANALYSIS

1. "[W]here the insurance contract is unambiguous, the language must be given its ordinary and usual meaning, the same as any other contract." *Ostendorf v. Arrow Ins. Co.*, 288 Minn. 491, 495, 182 N.W.2d 190, 192 (1970); *accord Firemen's Ins. Co. v. Viktora*, 318 N.W.2d 704, 706 (Minn.1982). "In interpreting insurance policy language, a court must give the terms 'their plain, ordinary, and popular meaning.'" *Maher v. All Nation Ins. Co.*, 340 N.W.2d 675, 679 (Minn.App.1983) (citing *Ostendorf*, 288 Minn. at 495, 182 N.W.2d at 192).

Applying these principles to this case, we find the language of the insurance policy contemplates that losses will be adjusted. It was a standard crop insurance policy. The language was clear. Provision 4(b) states, for example, "We recognize and apply the Loss Adjustment Procedures used by the Crop Insurance Industry." The "Claim for Indemnity" provisions set out

the calculations to be used in adjusting a claim. The contract requires National to determine the appraised production for the farm, including a reduction in the appraised production for crop losses caused by "uninsured causes and poor farming practices." The determination and adjustment of the appraised production is a key element of the policy. The arbitration provision, for example, is triggered by language which states, "If you and we fail to agree on the production to be counted toward guarantee because of loss ...."

■ Appellants' reliance on *Peterson v. Bendix Home Systems, Inc.*, 318 N.W.2d 50 (Minn.1982), is misplaced. *Peterson* held that the comparative fault statute was not applicable in a buyer's action for breach of warranty against the manufacturer of a mobile home for damages to the product itself and consequential damages. *Id.* at 55. In this case, there is no evidence in the record that the trial court considered application of the comparative fault statute, as in an auto negligence lawsuit. The trial court simply determined that damages should be apportioned between insured and uninsured causes following an application of the plain and ordinary meaning of the terms contained in the insurance contract.

■ 2. The thrust of appellants' second contention is that the trial court erroneously excluded evidence concerning future lost profits allegedly resulting from National's failure to provide consent to plow back the destroyed sunflower crop. At trial the court ruled the offered evidence lacked proper foundation and would have led to an improper speculation by the jury on the question of future damages. Appellants now challenge that ruling. Appellants did not, however, make a motion for a new trial and assign that ruling as error. The purpose of a motion for a new trial is to permit the correction of errors by the trial court before automatically incurring the expense and inconvenience associated with an appeal. *Phelan v. Carey*, 222 Minn. 1, 3, 23 N.W.2d 10, 12 (1946). To effectuate this purpose, the Minnesota Supreme Court has held "objections to eviden-

tiary rulings which were not assigned as error in a motion for a new trial are not reviewable by this court on an appeal from a judgment." *Fritz v. Arnold Mfg. Co.,* 305 Minn. 190, 194, 232 N.W.2d 782, 785 (1975); *see Antonson v. Ekvall,* 289 Minn. 536, 539, 186 N.W.2d 187, 189–90 (1971); *Hartman v. Blanding's Inc.,* 288 Minn. 415, 423, 181 N.W.2d 466, 470 (1970); *Heise v. J.R. Clark Co.,* 245 Minn. 179, 191, 71 N.W.2d 818, 826 (1955). Thus, this issue is beyond the scope of review of this court.

3. The standard for determining whether a directed verdict is proper was stated in *Midland Nat'l Bank v. Perranoski,* 299 N.W.2d 404, 409 (1980). The *Midland* court stated:

> [T]he trial court must consider the record as a whole and treat as credible the evidence for the adverse party and all inferences which may reasonably be drawn from that evidence. The trial court should grant the motion only when it would clearly be its duty to set aside a contrary verdict as manifestly against the evidence or when such a verdict would not comply with the applicable law. The same standard governs this court on review.

*Id.* (citations omitted).

■ The trial court did not err by dismissing Genereux from the suit. Appellants presented evidence that "Federal Crop Insurance" (Federal) would have settled the claim as opposed to denying it. Appellants rested, however, without presenting any evidence concerning how Federal would have calculated a settlement. The jury had no evidence upon which to award a specific amount of damages. The evidence that was presented indicated the policies were identical in terms of coverage and adjustment procedures. Thus, a verdict based upon differences between National's crop loss policy and Federal's crop loss policy would have been speculative. "Where the entire evidence sustains with equal justification two or more inconsistent inferences, ... it becomes the duty of the trial court to direct a verdict for the defendant because any ver-

dict to the contrary would be based on pure speculation or conjecture." *Village of Plummer v. Anchor Gas. Co.,* 240 Minn. 355, 359, 61 N.W.2d 225, 227 (1953).

Appellants claim the reason for any lack of proof is due to evidentiary rulings made by the trial court. These issues are not before this court because appellants did not make a motion for a new trial. *See* discussion *supra.*

4. After comparing fault based on special interrogatories to the jury, the trial court awarded damages of $63,659. Appellants claim the insurance contract is an "all or nothing" proposition and that they are entitled to recover their complete loss of $177,367. We reject this contention based on the policy language. After an extensive review of the record, however, we find the trial court's calculations slightly off in two ways. First, the trial court incorrectly calculated the portion of loss caused by uninsured causes. The jury found that 40% of appellants' crop loss was due to uninsured causes. The jury found that appellants could have obtained a yield of 800 pounds of sunflower seeds per acre if no losses from any cause had ensued.

The trial court used a flat figure of 320 pounds per acre (40% of 800 = 320) as the portion attributable to uninsured causes. This usage of the 320 pound figure was incorrect because it did not consider the applicable guarantees purchased by appellants. Instead of applying a flat 320 pounds per acre, the trial court should have applied the 40% figure to the applicable production guarantees of 715 or 830 pounds per acre. Thus, the loss attributable to uninsured causes would be 286 pounds and 332 pounds per acre respectively; see Memorandum on Calculation of Damages, which has been attached and incorporated into this opinion by reference.

Second, the trial court did not consider the 500–600 acres that were harvested and treated those acres as unharvested acreage. Consequently, the trial court's determination of the appraised production guarantee for those acres was 100 pounds per acre lower than specified by the insurance

contract. Appellants are entitled to an upward recalculation of their damages. See attached Memorandum.

## DECISION

The trial court correctly interpreted the insurance contract as providing for the adjustment of losses. The determination of crop losses attributable to uninsurable causes was a fact question properly submitted to the jury.

Exclusion of evidence concerning National's disputed refusal to permit plow back of the fields is an issue not reviewable by this court. Appellants failed to make a motion for new trial and assign as error the evidentiary exclusion.

The directed verdict in favor of respondent Genereux was proper given appellants' failure to fulfill their burden of proof. The record supports the trial judge's determination on this issue.

Nothing in the insurance policy or in the record supports appellants' view that these insurance policies are an "all or nothing" proposition. The trial court's damage calculations, however, were slightly incorrect as they used the flat figure of 320 pounds as the loss caused by uninsurable causes, and because harvested acreage was treated as unharvested acreage. We remand to the trial court for recalculation of damages. All other issues raised on appeal are affirmed.

Affirmed in part, reversed in part, and remanded.

## MEMORANDUM ON CALCULATION OF DAMAGES

The formula for determining compensation is set out in the policy. Basically, it provides for the following computation:

> Appraised production guarantee
> $\times$ Insured acreage
> $\times$ Price (11 cent/lb.)
> $=$ Amount payable

The basic question in this equation is determination of the applicable production guarantee. The appraised production guarantee should be calculated as follows:

> Guarantee purchased (715 or 830 lbs./acre)
> $-$ Portion of loss caused by uninsured cause (40%)
> $-$ Adjustment for unharvested acreage (100 lbs.) (where applicable)
> $=$ Appraised production guarantee

Appellants purchased crop guarantees of 715 lbs. per acre for 1176 acres and 830 lbs. per acre for 929 acres (excluding the 265 acres that were uninsured because appellants planted sunflowers on fields that were planted with sunflowers the previous year). Applying these equations, the calculation of damages should be as follows:

Appraised production guarantees

|  | | |  | |
|---|---|---|---|---|
| | 715 | | | 830 |
| $-$ | 286 | | $-$ | 332 |
| | 429 | | | 429 |
| $-$ | 100 | | $-$ | 100 |
| | 329 | | | 398 |

Compensation

|  | | |  | |
|---|---|---|---|---|
| | 329 lbs. | | | 398 lbs. |
| $\times$ | 1176 acres | | $\times$ | 929 acres |
| $\times$ | .11 per/lb. | | $\times$ | .11 (price—11 cents/lb.) |
| | $42,559 | | | $40,672 |

Total

$83,231

  16,429 unpaid (premiums owed by Appellants)

$66,802

The $66,802 figure does not include the upward adjustment for the 500–600 acres that were harvested by appellants. On remand, the trial court shall determine which acres were harvested, the applicable production guarantees for those acres, and adjust the calculations set forth above accordingly.