809 F.2d 1356
 Bankr. L. Rep. P 71,586
In re Kevin PIERCE, Individually and as a partner of Pierce
Farms, Debtor.
In re Wayne PIERCE, individually and as a partner of Pierce
Farms, Debtor.
In re Michael PIERCE, individually and as a partner of
Pierce Farms, Debtor.
Lyle PIERCE, individually and as a partner of Pierce Farms,
v.
AETNA LIFE INSURANCE COMPANY, Creditors Committee, Creditors
Schmalz, Fitzsimmons & Cassavan, Farmers Home Administration
& Commodity Credit Corporation, General Motors Acceptance
Corp., Wayne Drewes, Ch. 7 Trustee, National Farmers Union
Property & Casualty Company.
Neil A. McEWEN, Appellant,
v.
William P. WESTPHAL, U.S. Trustee and Wayne Drewes,
Bankruptcy Trustee, Appellees.
 No. 86-5148.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 8, 1986.
Decided Jan. 27, 1987.
Rehearing Denied Feb. 19, 1987.
 
 Neil A. McEwen, Thief River Falls, Minn., for appellant.
 William P. Westphal, Sr., Minneapolis, Minn. and Kip M. Kaler, Fargo, N.D., for appellees.
 Before LAY, Chief Judge, and WOLLMAN and MAGILL, Circuit Judges.
 MAGILL, Circuit Judge.
 
 
 1
 Attorney Neil A. McEwen appeals from an order of the district court[1] affirming an order of the bankruptcy court which denied compensation to McEwen for services rendered in representing certain debtors in their bankruptcy cases and in a state court proceeding.[2] We affirm.
 
 
 2
 I. BACKGROUND.
 
 
 3
 A. Facts.
 
 
 4
 On January 6, 1984, McEwen filed on behalf of the debtors, separate voluntary petitions in bankruptcy under Chapter 11 of the Bankruptcy Code.[3]
 
 
 5
 Prior to filing the Chapter 11 petitions, McEwen represented the debtors in Minnesota state court to recover on a crop insurance policy.[4] In connection with this case, McEwen entered into a contingent fee arrangement with the debtors, which provided that he would receive one-third of the amount recovered, or, in the event of an appeal, one-half of the recovery, plus costs and disbursements.
 
 
 6
 On July 12, 1983, the state court entered judgment in favor of the debtors in the amount of $41,088. McEwen subsequently appealed this judgment. All of McEwen's work on this case, except for oral argument on appeal, was completed before January 6, 1984, the day the bankruptcy petitions were filed.
 
 
 7
 McEwen argued the case before the Minnesota Court of Appeals on April 11, 1984, the date set by the bankruptcy trustee for the first meeting of creditors on the Chapter 11 bankruptcy cases. Because of this conflict, McEwen sent an associate to represent the debtors at the creditors' meeting. On May 22, 1984, the appeals court reversed the trial court's decision in part, and increased the debtors' recovery to $45,848. Pierce v. National Farmers Union Property & Casualty Co., 351 N.W.2d 366 (Minn.Ct.App.1984).[5] McEwen spent $2,198.82 in costs and disbursements in the litigation.
 
 
 8
 At a hearing on October 10, 1984, almost five months after the first creditors' meeting, the bankruptcy court noted that an order appointing McEwen as counsel for the debtors in the bankruptcy cases had not been filed. McEwen disputed this, apparently believing that an order had been filed at the first creditors' meeting from which he was absent. On October 11, 1984, the debtors, through McEwen, filed an application for McEwen's appointment. The application was considered by the court at a hearing on October 11, at which all parties were represented. At the same hearing, the court discussed whether McEwen had to file an application for special purpose on the state court suit, which had been completed by this time. Although McEwen had not previously filed this application, he did so on or after October 11.
 
 
 9
 On November 2, 1984, the court approved the application for McEwen's appointment as attorney for the debtors in the bankruptcy cases.[6] The court, however, never approved the application for special purpose.
 
 
 10
 McEwen began to prepare the debtors' petitions in mid-December of 1983. In order to secure payments for his work on the bankruptcy cases, McEwen obtained an $8,000 mortgage on real estate owned by debtor Lyle Pierce and his wife Elaine, who was not a party in the bankruptcy cases. McEwen recorded the mortgage on January 6, 1984, immediately before he filed the debtors' petitions. McEwen, however, did not disclose the mortgage in his application for employment filed on October 11, nor did he disclose it in his statement of attorney filed with the petitions.[7]
 
 
 11
 From December 1984 through May 1985, the creditors made a series of motions for relief from stay and motions to dismiss, all of which were denied. Soon thereafter, the debtors were allowed to convert their cases to Chapter 7 cases.
 
 
 12
 On June 19, 1985, McEwen submitted two applications to the bankruptcy court for attorneys' fees--one for $33,352.00 for work on the bankruptcy cases, and the other for $28,201.02 for work on the state case. The Chapter 7 trustee objected to all of these fees. The United States Trustee objected to the bankruptcy-related fees on the ground that they were excessive.[8]
 
 
 13
 On October 11, 1985, the bankruptcy court issued an order denying most of McEwen's claims for compensation. As to the state court fees, the court held that McEwen was not entitled to compensation because the costs of that litigation were not administrative expenses of the estate. In re Pierce, 53 B.R. 825, 827 (Bankr.D.Minn.1985). Although McEwen also argued that he was entitled to his state fees because he had an attorney's lien in the proceeds of the state court judgment, the court held that because McEwen failed to perfect the lien pursuant to Minn.Stat. Sec. 481.13, the trustee could avoid it under 11 U.S.C. Sec. 545(2). Id. at 827-28.
 
 
 14
 As to the bankruptcy-related fees, the court held that McEwen did not qualify for employment under 11 U.S.C. Sec. 327(a) because he did not meet the definition of a disinterested person. Id. at 828. Accordingly, the court denied McEwen's fees for his post-petition work on the bankruptcy cases. Id. at 828-29.[9] The court did, however, award McEwen $8,000 in administrative expenses as the reasonable value of his prepetition services rendered in the bankruptcy cases. Id. at 829.[10]
 
 
 15
 On March 2, 1986, the district court entered an order affirming the order of the bankruptcy court. This appeal followed.
 
 
 16
 II. DISCUSSION.
 
 
 17
 At the outset, we note that the bankruptcy court's findings of fact are subject to the clearly erroneous standard, but its legal conclusions are subject to de novo review. In re Martin, 761 F.2d 472, 474 (8th Cir.1985).
 
 
 18
 A. State Court Fees.
 
 
 19
 McEwen does not appeal the bankruptcy court's denial of his state court fees on the ground that they did not qualify as administrative expenses. Rather, McEwen argues that the district court erred in holding that he had to file notice of his attorney's lien under Minn.Stat. Sec. 481.13 in order to perfect his interest. He therefore maintains that his lien was not subject to the trustee's avoidance powers under 11 U.S.C. Sec. 545(2).
 
 
 20
 Under 11 U.S.C. Sec. 545(2), the trustee in bankruptcy has the power to avoid a statutory lien on a debtor's property if the lien "is not perfected or enforceable at the time of the commencement of the case against a bona fide purchaser that purchases such property at the time of the commencement of the case, whether or not such a purchaser exists." 11 U.S.C. Sec. 545(2) (1979 & Supp.1985). This section gives the trustee the status of a hypothetical bona fide purchaser as of the date the bankruptcy petitions were filed. 4 Collier on Bankruptcy p 545.04, at 545-19 (15th ed. 1986). Thus, if a statutory attorney's lien is not perfected or enforceable, the trustee can avoid the lien under Section 545(2). See, e.g., In re Burnham, 12 B.R. 286, 291 (Bankr.N.D.Ga.1981).
 
 
 21
 The nature, extent, and validity of the statutory lien are matters governed by state law. See In re Sea Catch, Inc., 36 B.R. 226, 228-30 (Bankr.D.Alaska 1983); 4 Collier on Bankruptcy p 545.04, at 545-19. In this case, the applicable law is that of Minnesota.
 
 
 22
 The only method of obtaining an attorney's lien in Minnesota is by complying with Minn.Stat. Sec. 481.13, which has preempted the common law in this area. Village of New Brighton v. Jamison, 278 N.W.2d 321, 324 (Minn.1979); Boline v. Doty, 345 N.W.2d 285, 288 (Minn.Ct.App.1984).[11] In analyzing McEwen's claim, the bankruptcy court focused on subsection (1), which provides that, whether or not there is a contract for fees, an attorney has a lien for compensation:
 
 
 23
 Upon the cause of action from the time of the service of the summons therein, or the commencement of the proceedings, and upon the interest of the attorney's client in any money or property involved in or affected by any action or proceeding in which the attorney may have been employed, from the commencement of the action or proceeding, and, as against third parties, from the time of filing the notice of such lien claim, as provided in this section [.]
 
 
 24
 Minn. Stat. Sec. 481.13(1) (emphasis added). Subsection (4) provides that if the lien is claimed on a client's interest in personal property, notice of the lien must be filed "in the same manner as provided by law for the filing of a security interest." Id. Sec. 481.13(4).[12]
 
 
 25
 Despite the seemingly clear statutory mandate, McEwen argues that notice is not required to perfect his lien. He claims that it is not the intent of the statute that a contingent fee contract on a cause of action seeking a money judgment is to be recorded under subsection (4). We cannot agree.
 
 
 26
 The plain language of subsection (1) requires that, whether or not there is a contract for compensation, notice of a lien claim upon a cause of action or upon the interest of the client in any property involved in the proceeding must be filed by the attorney in order for the lien to be effective against third parties. Minn.Stat. Sec. 481.13(1). Whether McEwen had a lien on the state cause of action, or on the money judgment because of his contingent fee contract, the statute clearly required him to file notice of the lien in order for his interest to be protected against the claims of third parties.[13] Moreover, because subsection (1) requires the attorney to record as provided in "this section," id. Sec. 481.13(1), and because subsection (4) requires notice for a lien on the type of personal property involved in this case to be filed in the same manner as for a security interest,[14] it appears that the legislature intended this procedure to amount to perfection of the attorney's interest.
 
 
 27
 Furthermore, the Minnesota Court of Appeals has recently indicated that under Minn.Stat. Sec. 481.13, an attorney's lien can be enforced only after it is established, see Boline, 345 N.W.2d at 289, and that "prior to establishing the lien a notice of attorney's lien must be filed in accordance with the requirements of Minn.Stat. Sec. 481.13, subd. 4." Id. (citing Schroeder, Siegfried, Ryan and Vidas v. Modern Electronic Products, Inc., 295 N.W.2d 514, 515 (Minn.1980)). Thus, whether notice is required to perfect the lien against third parties, as the bankruptcy and district courts held, or whether notice is required to establish the lien and thus make it enforceable, as the Minnesota Court of Appeals has stated, it is clear that McEwen's failure to file notice allows the trustee to avoid the lien. See 11 U.S.C. Sec. 545(2) (trustee may avoid statutory lien if it is not perfected or enforceable).[15]
 
 
 28
 Alternatively, McEwen argues that he is entitled to his state court fees because the trustee had actual and constructive notice of the contingent fee arrangement, and presumably therefore, notice of his lien. This claim, however, is without merit. Under Section 545(2) of the Code, the trustee has the power to avoid a statutory lien if the lien "is not perfected or enforceable at the commencement of the case against a bona fide purchaser * * *." 11 U.S.C. Sec. 545(2). It is clear, therefore, that notice is irrelevant in this case; McEwen's lien was never perfected or enforceable against the trustee, who is given the status of a hypothetical bona fide purchaser as of the date the petitions are filed. See 4 Collier on Bankruptcy p 545.04, at 545-19.
 
 
 29
 Finally, McEwen argues that it would be inequitable to deny him the fruits of his labor. The bankruptcy court, however, found that this was not a case where equitable considerations should apply. In re Pierce, 53 B.R. at 827 n. 4.[16] We find, as did the district court, that the bankruptcy court did not abuse its discretion in declining to apply its equitable powers in this case. We further note that the effect of the bankruptcy court's order is not to totally deny McEwen's fees and expenses, but rather, to relegate his status in claiming those fees to that of the other general, unsecured creditors.
 
 
 30
 In summary, we hold that the bankruptcy court did not err in allowing the trustee to avoid McEwen's lien. Because McEwen failed to file notice of his lien under Minn.Stat. Sec. 481.13, the lien was either unperfected, or not established and therefore unenforceable. Thus, the trustee could avoid the lien under 11 U.S.C. Sec. 545(2).
 
 
 31
 B. Bankruptcy-Related Fees.
 
 
 32
 McEwen argues that, under the facts of this case, his prepetition mortgage did not disqualify him from employment as a disinterested person. Additionally, McEwen argues that he should be awarded his fees nunc pro tunc prior to his order of appointment because he was under the mistaken impression that an order had been filed, and because he worked for the debtors during this period without objection from any of the parties involved. Because of our conclusions as to the first claim, however, it will become evident that the second claim is essentially moot.
 
 
 33
 The bankruptcy court, with the district court affirming, held that McEwen was not entitled to compensation for his post-petition work because he was not a disinterested person. Under 11 U.S.C. Sec. 327(a), the trustee could employ,[17] with the court's approval, an attorney who did "not hold or represent an interest adverse to the estate, and [was a] disinterested person * * *." 11 U.S.C. Sec. 327(a). Although framed conjunctively, the conditions are applied disjunctively; failure to meet either will result in disqualification. See In re Leisure Dynamics, Inc., 32 B.R. 753, 754 (Bankr.D.Minn.) (supplemental opinion to 32 B.R. 751), aff'd, 33 B.R. 121 (D.Minn.1983).
 
 
 34
 The bankruptcy court found that McEwen failed to meet two parts of the definition of a disinterested person:
 
 
 35
 (13) "disinterested person" means person that--
 
 
 36
 (A) is not a creditor, an equity security holder, or an insider;
 
 
 37
 * * *
 
 
 38
 * * *
 
 
 39
 (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor * * *[.]
 
 
 40
 11 U.S.C. Secs. 101(13)(A), (E) (emphasis added). Specifically, the court held that McEwen was not disinterested because "[h]e was a prepetition creditor of these estates, and he held a mortgage on the Debtors' real property to secure payment of prepetition and post-petition services." In re Pierce, 53 B.R. at 828. The court also stated that this placed McEwen "in an untenable position adverse to both the Debtors and other interests in the cases." Id. Because McEwen failed to meet the definition of a disinterested person, and thus failed to qualify for employment under Section 327(a), the court denied McEwen's post-petition fees. Id. at 828-29 (citing In re Leisure Dynamics, Inc., 33 B.R. 121 (D.Minn.1983)).[18]
 
 
 41
 Despite the express statutory language disqualifying an attorney who is a creditor, McEwen argues that these rules should not be applied blindly, and that the test for disinterestedness should be whether the attorney possesses an interest that would color his independent judgment and impartial attitude. See In re O'Connor, 52 B.R. 892, 899 (Bankr.W.D.Okla.1985). Although McEwen's argument is not without merit, the intent of the statute is clear; if a professional is a creditor, then that person is not disinterested under 11 U.S.C. Sec. 101(13) and is subject to disqualification under Section 327(a). As this court recently noted, the professional's complaint in this area lies with Congress, not the courts. In re Daig Corp., 799 F.2d 1251, 1253 n. 5 (8th Cir.1986), aff'g, 48 B.R. 121 (Bankr.D.Minn.1985).
 
 
 42
 Moreover, there are two other grounds upon which the court could have denied McEwen's fees. First, under Section 327(a), an attorney may be disqualified not only because he or she is not disinterested, but also because the attorney holds an "interest adverse to the estate." 11 U.S.C. Sec. 327(a). At least one court has held that an attorney's pre-petition mortgage on the debtor's real estate constitutes an "adverse interest" under Section 327(a). In re Martin, 59 B.R. 140, 143 (Bankr.D.Maine 1986); see also In re Roberts, 46 B.R. 815, 849 (Bankr.D.Utah 1985) (attorney's pre-petition debt for legal fees for services not rendered in connection with bankruptcy case would constitute an adverse interest). Thus, the court could have denied compensation on this ground.[19]
 
 
 43
 Second, by failing to disclose the secured mortgage in either the statement of attorney or in the application for employment filed on October 11, 1984, McEwen committed a classic violation of the disclosure requirements embodied in 11 U.S.C. Sec. 328(a) and Bankruptcy Rule 2014(a).[20] Many courts have denied compensation to professionals where, in addition to other factors, they failed to previously disclose a relationship with the debtor that could have presented a potential area of conflict. See, e.g., In re Gray, 64 B.R. 505, 508 (Bankr.E.D.Mich.1986); In re Roberts, 46 B.R. at 850; In re Patterson, 53 B.R. 366, 373, 374 (Bankr.D.Neb.1985); In re Guy Apple Masonry Contractor, Inc., 45 B.R. 160, 162-63, 168 (Bankr.D.Ariz.1984).[21]
 
 
 44
 In summary, we find that the bankruptcy court could have denied McEwen his fees on any of the three aforementioned grounds. The court, however, determined that because McEwen was not disinterested, it would deny his post-petition fees. Because denial of compensation is within the court's discretion, see 11 U.S.C. Sec. 328(c), and because we perceive no abuse of that discretion, we affirm the bankruptcy court's denial of McEwen's post-petition fees.
 
 
 45
 Finally, as alluded to previously, it is apparent that because of our affirmance on this issue, McEwen's claim that he should be awarded his bankruptcy fees nunc pro tunc for the period preceding his application of employment is, in effect, mooted. Even if we had determined that the bankruptcy court abused its discretion in not issuing the order nunc pro tunc, although we would probably not do so under the facts of this case and in light of the deference given to the bankruptcy courts in this area, see J.L. Lavender v. Wood Law Firm, 785 F.2d 247 (8th Cir.1986), to allow the total amount of the bankruptcy-related fees would obviously conflict with our prior determination that McEwen is not entitled to his post-petition fees.III. CONCLUSION.
 
 
 46
 Based on the foregoing analysis, we affirm the order of the bankruptcy court denying all of McEwen's claims for compensation except for the $8,000 awarded as pre-petition administrative expenses of the estate.
 
 
 
 [1]
 The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota, Fourth Division
 
 
 [2]
 The bankruptcy court's decision is reported as In re Pierce, 53 B.R. 825 (Bankr.D.Minn.1985) (O'Brien, J.). The cases were originally assigned to the Honorable William A. Hill, Bankruptcy Judge for North Dakota, who was handling Northwestern Minnesota cases at the time. The cases were subsequently transferred to the bankruptcy court in Minnesota, where they were briefly assigned to the Honorable John Connelly and then to the Honorable Margaret A. Mahoney, before final assignment to the Honorable Dennis D. O'Brien
 
 
 [3]
 The bankruptcy debtors in this case are Lyle Pierce and his three sons, Michael, Wayne, and Kevin. The debtors filed their bankruptcy petitions individually and as partners in Pierce Farms, a family farm partnership
 
 
 [4]
 In addition to representing the debtors (Pierce Farms), McEwen also represented Agassiz Farms, a venture owned by Lyle Pierce's daughter
 
 
 [5]
 Although McEwen appealed the case on four different grounds, the appeals court found that the only error the trial court made involved a slight miscalculation in damages. See National Farmers, 351 N.W.2d at 370. The amended award for both plaintiffs amounted to $66,802, of which $45,848 was awarded to the Pierce Farms debtors
 
 
 [6]
 McEwen alleges that he filed the application for his employment nunc pro tunc, although nowhere on its face does the application request this type of approval. Additionally, the bankruptcy court's order stated only that McEwen was "authorized to be employed by the [four] debtors as their attorney under a general retainer, subject to the limitations on compensation provided by 11 USC 328." Order Authorizing Employment of Attorney Under General Retainer (Bankr.D.Minn. Nov. 2, 1985) (Connelly, J.)
 
 
 [7]
 Along with filing the bankruptcy petitions on January 6, 1984, McEwen filed a fee disclosure statement for each debtor. In these statements, McEwen stated that he had received or was to receive $2,000 from each debtor. The statements made no mention of the mortgage, although the bankruptcy court indicated that the total $8,000 was secured by the mortgage. See In re Pierce, 53 B.R. at 825-26. The only mention of the mortgage in any statements filed with the bankruptcy court appears to be in certain statements filed by the debtors on January 30, 1984, and later in schedule B-3, where the debtors stated that certain lake property had been assigned to McEwen. No dollar amount, however, was given in either of these forms
 
 
 [8]
 We note that in his supervisory capacity, the United States Trustee has standing to object to and challenge various matters such as allegedly excessive fee applications. See 28 U.S.C. Sec. 586; Bankruptcy Rules X-1008(a)(3), -1009(a)
 
 
 [9]
 In a footnote, the court noted that it had flexibility under 11 U.S.C. Sec. 105 to authorize a pre-petition creditor attorney to represent the estate. However, the court further noted that the prerequisites to issuing such an order had not been met. In re Pierce, 53 B.R. at 829 n. 8
 
 
 [10]
 Upon the trustee's cross-appeal, the district court held that the $8,000 award to McEwen was not clearly erroneous. The trustee has not appealed this decision, and therefore, the issue is not before this court
 
 
 [11]
 The previous version of Minn.Stat. Sec. 481.13 included provisions for possessory and retaining liens. However, the legislature amended the statute in 1976, and presently, the statute provides only for charging liens. Boline, 345 N.W.2d at 288
 
 
 [12]
 In total, section 481.13(4) provides:
 If the lien is claimed on the client's interest in real estate involved in or affected by the action or proceeding, such notice of intention to claim a lien thereon shall be filed in the office of the county recorder or register of titles, where appropriate, and therein noted on the certificate or certificates of title affected, in and for the county within which the same is situated. If the lien is claimed on the client's interest in personal property involved in or affected by the action or proceeding, the notice shall be filed in the same manner as provided by law for the filing of a security interest.
 Minn.Stat. Sec. 481.13(4) (emphasis added).
 
 
 [13]
 There appears to be a bit of confusion in this case because of the existence of a contingent fee contract. The contract itself, however, only represents the promise of the debtors to pay McEwen; it does not constitute a lien in and of itself. Rather, in Minnesota, the lien arises only when the attorney complies with the attorney's lien statute. Compare Jamison, 278 N.W.2d at 324, with In re Armando Gerstel, Inc., 43 B.R. 925, 929 (Bankr.S.D.Fla.1984) (under Florida law, attorney's contract for compensation to be paid from client's recovery results in an equitable lien which is based on common law rather than statute)
 
 
 [14]
 McEwen attempts to distinguish his type of interest as not being the type the legislature intended to be covered under subsection (4); he claims that an interest in a money judgment is not an interest in a client's "personal property." The legislature, however, clearly provided that notice must be filed for liens on the client's interest in either real or personal property. See Minn. Stat. Sec. 481.13(4). Whether McEwen's interest is classified as a lien on a money judgment or otherwise, it is clear that the lien is on personal property of the client, albeit an intangible interest. The statute, however, makes no distinctions between intangible and tangible personal property, but requires that notice of liens on all types of personal property must be recorded
 
 
 [15]
 Although McEwen did not do so, the district court noted that he could also have established his lien under Minn.Stat. Sec. 481.13(3). See Minn.Stat. Sec. 481.13(3) (attorney may establish lien in summary proceeding or in separate equitable action)
 
 
 [16]
 As the district court noted, the bankruptcy court appeared to question the reasonableness of McEwen's state court fees. The bankruptcy court noted that of the four grounds upon which McEwen's state court appeal was based, three were stricken by the appellate court. The remaining basis for appeal involved a computation error which the bankruptcy court noted could have been corrected by the trial court, thus making the appeal unnecessary. See In re Pierce, 53 B.R. at 827 n. 4. As a result of the appeal, however, McEwen had a claim on one-half of the proceeds, rather than one-third, under the contingent fee contract. Additionally, even though the judgment on appeal was slightly larger, the debtors received less after the appeal because of the increased contingent fee
 
 
 [17]
 Pursuant to 11 U.S.C. Sec. 1107(a), the debtors-in-possession have the same authority as the trustee does under 11 U.S.C. Sec. 327(a)
 
 
 [18]
 Although not cited by the bankruptcy court, it is clear that the court had the authority to deny McEwen's post-petition fees pursuant to 11 U.S.C. Sec. 328(c), which provides:
 Except as provided in Section 327(c), 327(e), or 1107(b) of this title, the court may deny allowance of compensation for services and reimbursement of expenses of a professional person under section 327 or 1103 of this title if, at any time during such professional's employment under section 327 or 1103 of this title, such professional person is not a disinterested person, or represents or holds an interest adverse to the interest of the estate with respect to the matter on which such professional person is employed.
 11 U.S.C. Sec. 328(c) (emphasis added). Although the bankruptcy court denied McEwen's post-petition fees, the court concluded that McEwen was not disqualified to receive compensation for his work in preparing the debtors' petitions and schedules since this work was done before filing and before the requirements of Section 327(a) became applicable. In re Pierce, 53 B.R. at 829 (citing Kotts v. Westphal, 746 F.2d 1329, 1330 (8th Cir.1984)).
 McEwen argues, as he did before the district court, that he cannot be denied compensation under Section 328(c) solely because of his prior employment by the debtors on the state case. See 11 U.S.C. Sec. 1107(b) (person may not be disqualified from employment under Section 327(a) solely because of that person's employment by or representation of the debtor before the commencement of the case). Although this is a correct statement of law, the bankruptcy court did not deny McEwen's fees solely because he represented the debtors in a different case. Rather, the court also stated that McEwen was disinterested because the mortgage placed him in a position adverse to other parties. In re Pierce, 53 B.R. at 828; see also In re Leisure Dynamics, Inc., 32 B.R. at 755 (attorneys not disqualified solely because of their prepetition representation of the creditor, but also because they were insiders).
 
 
 [19]
 Although the Martin court awarded the attorneys their fees, the only reason it did so was because the attorneys fully disclosed the mortgage to the court at the commencement of the case. See In re Martin, 59 B.R. at 140. We presume that if the attorneys had failed to disclose the mortgage, as McEwen did here, the court may have denied the attorneys their fees
 
 
 [20]
 McEwen claims that the trustee and the bankruptcy court were fully aware of the mortgage at the time he filed his application for employment, and that there was no objection made to his employment at that time. It appears to this court, however, that the only knowledge that these parties would have of the mortgage would be from the statements filed by the debtors on January 30, 1984, and in schedule B-3 which was filed soon thereafter. Neither the bankruptcy court or the trustee, however, should have the awesome responsibility of combing through the often voluminous materials that are filed with the court in order to ascertain every possible conflict of interest in a particular case, especially when a professional's potential conflicts are required to be disclosed in the application itself. See Bankruptcy Rule 2014(a). In fact, we suspect that this was part of the reason for enactment of the disclosure requirements
 
 
 [21]
 McEwen also may have violated Bankruptcy Rule 9011(a) when he signed the affidavit accompanying the application for his employment, and the affidavit stated that to the best of his knowledge he held no interest adverse to the estate. See In re Gray, 64 B.R. at 508-09